FILED

98 OCT 21 AM 10: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

OCT 2 1 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

    CHRISTOPHER HILL &
    TINA M. HILL,
        Debtors,

BK CASE NO. 98-71375-CMS-13

CHRISTOPHER HILL &
TINA M. HILL,
    Appellants

vs.

CIVIL ACTION NO.
CV-AR-1839-W
98

LOAN SERVICE CENTER
(a/k/a Consumer Portfolio
Services, Inc.)

    Appellee.

## MEMORANDUM OPINION

Presently before the court is an appeal from an order entered on June 24, 1998 by the United States Bankruptcy Court for the Northern District of Alabama. The order dismissed a complaint filed by Christopher and Tina M. Hill ("the Hills"), the debtors-appellants in the above-entitled appeal, seeking turn-over of a vehicle repossessed by Loan Service Center a/k/a Consumer Portfolio Services, Inc. ("LSC"), appellee in the above-entitled appeal. It was LSC's motion to dismiss that was granted in June 24, 1998.

### Background

On December 9, 1997 the Hills purchased a 1995 Dodge Neon from LSC for approximately $10,000.00. The Hills defaulted on the payments due under the contract and on May 7, 1998, LSC repossessed the vehicle. Also, on May 7, LSC mailed the Hills a "Notice of Intent to Dispose of Motor Vehicle"

1

14

("the Notice") informing them that the car had been repossessed and advising them of their rights. Specifically, the Notice informed the Hills that they could "redeem" the vehicle by paying off the total indebtedness ($10,341.28) within 15 days from the date of mailing. The Notice also informed the Hills that they could "reinstate the contract" by paying the total reinstatement due[1] ($1187.48) within 15 days from the date of mailing.

Prior to the running of the 15 days, the Hills filed a Chapter 13 petition on May 19, 1998. Under the terms of their "plan," the Hills proposed to pay the full amount of the claim less the unearned premium for the warranty at the market interest rate rather than the contract interest rate. Also on May 19, the Hills filed a complaint in the bankruptcy court for turn-over of the repossessed automobile. Based on the holding of the Eleventh Circuit in *Charles R. Hall Motor Co., Inc. v. Lewis*, 137 F.3d 1280, *reh'g denied*, 149 F.3d 1197 (11th Cir. 1998), the bankruptcy court denied the Hills' turn-over complaint and granted LSC's motion to dismiss.[2] The Hills accept the bankruptcy court's factual findings but contest the court's conclusions of law. This court will review those conclusions *de novo*. *See In re Joe Morgan*, 855 F.2d 1554 (11th Cir. 1993).

## Discussion

The main issue on appeal is whether the repossessed vehicle was

---

[1] The "total reinstatement due" consists of the sum of all delinquencies (past due payments and late charges), collection and repossession costs, and attorneys fees.

[2] Though the bankruptcy court made an oral ruling on June 12, the corresponding order was not entered until June 24, 1998. LSC, however, relied on the oral ruling of June 12 and sold the vehicle to a *bona fide* purchaser on June 24. In light of the disposition of the property in question, LSC filed a motion to dismiss the appeal as moot. By an order entered September 14, 1998, this court denied the motion.

subject to turnover under federal bankruptcy law. *See* §§ 11 U.S.C. 362(d); 363(b),(e);542(a) (1993). A court may order a third party to turn property in its possession over to the debtor's estate if three requirements are met. *Lewis*, 137 at 1282. First, the property must be part of the debtor's estate. *Id.* Second, at the moment the debtor filed his or her petition, the debtor must have had a right to use, sell or lease the property. *Id.* Third, the third party's interest in the property must be adequately protected. *Id.* The bankruptcy court concluded that the vehicle was not property of the Hills' estate and therefore did not address the second and third requirements. This court agrees with the bankruptcy court's assessment of the first requirement and similarly finds no need to address the second and third requirements.

Whether the repossessed automobile is property of the estate is a question that incorporates both state and federal law issues. *See Lewis*, 137 F.3d at 1282. State law defines the nature of the Hills' remaining property interests in the repossessed vehicle, while federal law determines whether those interests render the vehicle part of the Hills' bankruptcy estate. *See id.* There are essentially three ways the repossessed vehicle could have become part of the Hills' bankruptcy estate: (1) Legal title could have remained with the Hills despite their default and LSC's repossession; (2) the Hills' right of redemption, or their effective exercise of this right, could have brought the property within the bankruptcy estate; or (3) the Hills' contractually granted right of reinstatement, or their effective exercise of that right, could have rendered the vehicle part of the bankruptcy estate. Despite the Hills' attempts to distinguish their case from *Lewis,* that case controls the first two possibilities and provides significant guidance on the third.

3

## I. Does legal title transfer to a creditor upon a debtor's default?

Prior to Alabama's adoption of the Uniform Commercial Code ("U.C.C."), the law was clear: upon a debtor's default, both title and the right of possession passed to a creditor. *Turner v. DeKalb Bank,* 209 B.R. 558, 564 (Bankr.N.D.Ala. 1997). Since the adoption of the U.C.C. however, courts in Alabama have divided. The confusion stems from § 7-9-503, which affirmatively states that a creditor has the right to take possession of secured collateral upon default but is silent as to whether legal title also passes to the creditor.

### A. Title Does Not Pass upon Default

Some bankruptcy courts in the Northern District have interpreted this silence in § 7-9-503 as a sign that the Alabama Legislature intended that only the right to possession would pass to a creditor upon default, leaving the debtor with legal title. *See Turner,* 209 B.R. at 568; *Gerold v. Compass Bank,* Adv. No. 97-00076. slip op. at 4 (Bankr.N.D.Ala. April 17, 1997); *see generally Mattheiss v. Title Loan Express,* 214 B.R. 20, 32 (Bankr.N.D.Ala. 1997). *Turner v. DeKalb Bank* provides an excellent summary of this position.

In *Turner,* the United States Bankruptcy Court for the Northern District of Alabama first identified several state statutes it found persuasive as suggestions that title remains with the debtor upon default. *See* 209 B.R. at 564 (discussing Uniform Certificate of Title and Anti-theft Act of Alabama, §§ 32-8-1 *et seq.*) Appellants cite these same provisions and others in arguing that state law does not transfer title upon default.

The *Turner* court also read several U.C.C. provisions together to conclude that the U.C.C. replaced the common law rule and only the right of

4

possession passes to the creditor upon default. 209 B.R. at 565-66. Specifically, the court in *Turner* noted that § 7-9-207 charges the creditor with certain duties while in possession of the collateral. The court found that there would be no reason to provide the debtor with protection from a creditor's abuse of collateral if the law strips the debtor of title. *Id.* at 565.

The *Turner* court then turned its attention to § 7-9-504, which allows a creditor to dispose of collateral to satisfy a corresponding debt and reasonable expenses provided that the creditor give the debtor with reasonable notice. *See id.* If the creditor fails to provide adequate notice, the debtor may sue the creditor for conversion. *Id.; Davis v. Huntsville Prod. Credit Ass'n*, 481 So.2d 1103, 1107 (Ala. 1985); *Simmons Machinery Co. v. M&M Brokerage, Inc.*, 409 So.2d 743, 751 (Ala. 1981). Because an action for conversion will not lie unless the debtor has legal title and immediate right of possession to the property, the *Turner* court reasoned that the recognition of a cause of action for conversion implies that the debtor retains legal title. *Turner*, 209 B.R. at 566. The *Turner* court also read § 7-9-504 as providing for transfer of ownership from the debtor to a *bona fide* purchaser, not from the creditor to the *bona fide* purchaser. *Id.* This reading of the statute further persuaded the bankruptcy court that title did not there pass to the creditor upon default. *Id.*

**B. Title Does Pass to Creditor upon Default**

Most other courts, including the Eleventh Circuit, remain true to the common law rule that both title and right of possession pass to a creditor upon default. *See Charles R. Hall Motors v. Lewis*, 137 F.3d 1280 (11th

5

Cir. 1998); *Warren v. Ford Motor Credit Co.*, 673 F.2d 1673 (11th Cir. 1982); *Warren v. Southtrust Bank*, 221 B.R. 843 (Bankr.N.D.Ala. 1998); *Pierce v. Ford Motor Credit Co.*, 373 So.2d 1113 (Ala.Civ.App. 1979), *writ denied sub nom Ex Parte Pierce*, 373 So.2d 1115 (Ala. 1979); *American Nat'l. Bank & Trust v. Robertson*, 348 So.2d 1122 (Ala.Civ.App. 1980); *see generally Rainey v. Ford Motor Credit Co.*, 313 So.2d 179 (Ala. 1979). In deciding *Charles R. Hall v. Lewis*, the Eleventh Circuit noted the "many logical reasons why a debtor upon default should lose only his or her right to possess the secured personalty," but nevertheless rejected *Turner* and its arguments, finding the state courts in agreement that title passes upon default. *See id.* at 1283-84.

In rejecting *Turner*, the Eleventh Circuit noted the state courts' treatment of conversion claims -- a factor relied upon in *Turner* to conclude that only the right to possession passes to a creditor upon default -- in support of the continued effect of the common law rule. *Id.* at 1283-84; *see also Thompson v. Ford Motor Credit Co.*, 550 F.2d 256, 258 (5th Cir. 1977) (debtor's conversion action will not lie because upon default title and the right to possession pass to the creditor); *Pierce*, 373 So.2d at 1115 (affirming directed verdict against debtor on conversion claim where debtor's title passed to creditor upon default). The Hills argue that the *Lewis* court failed to notice state court opinions that allow conversion actions. The cases cited by the Hills, however, provide little guidance as to which party retains title because the conversion actions in those cases were based on other grounds. *See Wells v. Central Bank, N.A.*, 347 So.2d 114, 117 (Ala.Civ. App. 1977) (conversion action based on sale without allowing debtor to exercise right to redeem, no finding that debtor

6

retained title). In fact, the Hills' restatement of *Wolfe v. McClung* seems to *undermine* their argument that the recognition of conversion actions demonstrates that title remains with the debtor. See 445 So.2d 913, 915 (Ala. Civ. App. 1995) ("title to the property is irrelevant to sustain this type of conversion action").

This court is bound by the *Lewis* decision. *Lewis* rejects the reasoning of *Turner* and holds that title passes to the creditor upon default. See *Lewis*, 137 F.3d at 1284; see also *Warren*, 693 F.2d at 1376. Moreover, for the following reasons, this court would hold like the *Lewis* court did, even without *Lewis*. The facts in *Lewis* and in the instant case are virtually indistinguishable.

First, although *Turner* notes that § 7-9-207 requires the creditor to use "reasonable care in the custody and preservation of collateral in his possession," the balance of the duties and obligations created by § 7-9-207 fall upon the debtor. For instance, the debtor must pay all reasonable expenses (including the cost of insurance) incurred in the custody and preservation of the collateral and bears the risk of any accidental loss or damage if insurance coverage is deficient. In short, § 7-9-207 merely obligates the creditor to take the same care in preserving the collateral as was required of the debtor.

Second, contrary to the interpretation accorded in *Turner*, the language of § 7-9-504 does not definitively indicate that title transfers from the debtor to a *bona fide* purchaser. Rather, the statute states only that all of the debtor's *interests* in the property are transferred to a *bona fide* purchaser. Under Alabama law, legal title would not be included among those interests since the debtor lost legal title upon default.

7

Third, this court notes to the well-known maxim of statutory construction that counsels a "statute in derogation or modification of the common law will not be presumed to alter it further than is expressly declared. *Pappas v. City of Eufaula*, 210 So.2d 802 (Ala. 1968). In the absence of a definitive statement from the Alabama Legislature indicating that legal title shall *not* pass upon default, this court presumes that § 7-9-503 was not intended to alter the common law rule. *See id.*

## II. The Right of Redemption

### A. Statutory Right of Redemption

Having concluded that the Dodge Neon did not become property of the Hills' bankruptcy estate by virtue of the Hills' retaining legal title, the next question is whether the Hills' right of redemption in the property, conferred by § 7-9-506, was sufficient to bring the vehicle within the bankruptcy estate. Addressing the exact same question in *Lewis,* the Eleventh Circuit concluded that while the statutory right of redemption in a repossessed automobile becomes part of the bankruptcy estate, the mere existence of that right does not render the vehicle itself property of the estate. *Id.; see also Warren*, 221 B.R. at 844. According to the Eleventh Circuit, a debtor must take "affirmative steps" to change the "otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest." *Lewis*, 137 F.3d at 1284. Such affirmative steps include the debtor's "tendering fulfillment of all obligations" plus the expenses associated with the repossession. *Lewis,* 137 F.3d at 1284; *see* § 7-9-506; *Warren*, 221 B.R. at 844.

Relying on the earlier case of *Commercial Federal v. Smith*, the *Lewis* court interpreted the phrase "tendering fulfillment" as requiring a lump

8

sum payment for the principal, interest, and other charges within one year of the foreclosure sale. *Lewis,* 137 F.3d at 1284 (citing *Smith,* 85 F.3d at 1555, 1557-58 (11th Cir. 1996). The Hills object to the requirement of a lump sum payment and attempt to distinguish *Smith* from whence the requirement comes. Notwithstanding the Hills' arguments, this court is bound by *Lewis* and further finds that the requirement of a lump sum payment for redemption of personal property is amply supported by the Official Comments to § 7-9-506. These Comments explain that "'[t]endering fulfillment' obviously means more than a new promise to perform the existing promise; it requires payment of all monetary obligations then due." § 7-9-506 cmnt.; *see also Warren,* 221 B.R. at 846-47.

The Hills argue that if state law does in fact require payment of a lump sum in order for the borrow to effectively exercise his or her right of redemption, this principle law is preempted by the Supremacy Clause. The Hills contend that the state requirement of a lump sum payment conflicts with the federally conferred right of the debtors to cure their default under 11 U.S.C. § 1322. This argument confuses the Hills' right of redemption with their right to cure a default. The first is a state created right that, when effectively exercised according to state law, is a property interest sufficient under federal law to render the repossessed vehicle part of the Hills' bankruptcy estate and therefore subject to turn-over if other federally imposed requirements are met. The right to cure a default under § 1322 has no bearing on this analysis. *See generally Charles R. Hall Motors, Inc. v. Lewis,* 211 B.R. 970, 974-75 (N.D.Ala. 1997). Neither the right to cure the default nor the manner in which that default can be cured has any effect on a property interest that could be sufficient to render the vehicle part of the Hills' bankruptcy estate.

9

Having concluded that effective exercise of the statutory right of redemption requires a lump sum payment for all obligations then due, the next issue is whether the Hills' proposed plan of repayment satisfies this requirement. The Hills argue that, unlike the plan in *Lewis*, their plan proposes to pay the entire debt and therefore satisfies § 7-9-506. For two reasons, this court disagrees. First, because the Hills propose to pay their debt to LSC at the *market* interest rate instead of the *contract* interest rate, the payment may not satisfy all obligations under the contract. Second, under the plan, the Hills would pay the entire balance over 55 months, paying $148.66 each month. The proposal of monthly payments merely represent a "new promise to fulfill the existing promise" to pay the debt, rather than a fulfillment of all obligations. § 7-9-506 cmnt.; *see also Warren*, 221 B.R. at 846-47 (and cases cited therein). Because the Hills do not propose a lump sum payment of all obligations due under the contract, they did not exercise their statutory right of redemption in a manner sufficient to bring the vehicle within the protection of the bankruptcy estate. *See Lewis*, 137 F.3d at 1284; *Warren*, 221 B.R. at 848.

### B. *Equitable Right of Redemption*

The Hills next point out that the *Lewis* decision did not address the equitable right of statutory redemption, in as much as the equitable right of redemption, in that case, had been extinguished by a foreclosure sale on the property at issue. In contrast, at the time the bankruptcy court dismissed the Hills' turn-over complaint, LSC had not yet sold the vehicle. The Hills therefore possessed an equitable right of redemption that, like the statutory right of redemption, was part of the bankruptcy estate. *See*

*In re Saylor*, 869 F.2d 1434, 1436 (11th Cir. 1989). The next question is whether the mere existence of that right is sufficient to bring the repossessed vehicle into the Hills' bankruptcy estate. The same reasons supporting the *Lewis* court's mandate of affirmative steps taken to transform the otherwise dormant right of redemption to a meaningful property interest suggest that the mere existence of the Hills' equitable right of redemption does not bring the vehicle into the bankruptcy estate. A survey of cases indicates that payment of the entire debt through a monthly payment plan would be an effective exercise of the right of redemption. *See, e.g., Saylor*, 869 F.2d at 1436 (mortgagor retains statutory and equitable right of redemption that provides mortgagor with ability to save home by paying off mortgage debt); *Trauner v. Lowrey*, 369 So.2d 531, 534 (Ala. 1979) (execution of mortgage divests mortgagor of legal title, only equity of redemption remains, but upon payment of debt, title revests in mortgagor). The Hills' plan, however, does not propose to repay the entire debt owed under the contract since the plan calls for repayment at the market interest rate while the contract calls for payment at the contract interest rate. Because the Hills' have not indicated an intent to effectively exercise their equitable right of redemption, this right remains dormant and is insufficient to bring the repossessed vehicle into the bankruptcy estate. *See generally Saylor*, 869 F.2d at 1436; *Trauner*, 369 So.2d at 534.

### III. The Effect of the Right of Reinstatement

The Hills argue that LSC's conferral of the right to reinstate the contract evidences LSC's belief that the Hills retained title to the vehicle. The court finds no basis for such a conclusion.

11

Even if the Hills' contention is correct, and LSC did believe or fear that legal title remained with the Hills, this fact is of no consequence in an action for turn-over of the vehicle. Property is subject to turn-over only if it <u>actually</u> <u>was</u> part of the bankruptcy estate at the time the turn-over complaint was filed. As explained previously, under Alabama law legal title passes to the creditor upon a debtor's default. The vehicle was not part of the bankruptcy estate by virtue of the Hills merely retaining title, regardless of what the parties may have believed.

The only remaining question with regard to the right of reinstatement is whether the Hills' property interest in the right of redemption is sufficient to render the vehicle property of the bankruptcy estate. Following the pattern established by the holding of *Lewis*, the right of redemption itself is part of the Hills' bankruptcy estate, but that dormant right is insufficient to bring the property within the bankruptcy estate. The Hills must take affirmative steps indicating their exercise of the right of redemption. The Notice sent to the Hills on May 7 provides the only indication as to how the Hills might effectively exercise their right of redemption. The Notice informed them that they must pay the total reinstatement amount within 15 days. The Hills did not comply, and have therefore not exercised their right to reinstate the contract in a manner that would render the vehicle property of the bankruptcy estate.

## Conclusion

This case is controlled by the Eleventh Circuit precedent of *Lewis*. The Hills' repossessed vehicle was not subject to turn-over because the Hills fail to satisfy at least one of the three prerequisites for a successful turn-over action.

Specifically, the vehicle was not part of the bankruptcy estate. The Hills lost legal title to the repossessed automobile upon their default to LSC. Though the Hills' property interests in the right to statutory and equitable redemption of the vehicle, and the right to reinstate the contract, all became part of the Hills' bankruptcy estate, the mere existence of these rights does not constitute a sufficient property interest in the vehicle to render it part of the bankruptcy estate. Affirmative steps are required before these otherwise dormant rights become meaningful ownership interests.

The Hills did not timely take the affirmative steps necessary to exercise either the statutory or equitable right of redemption in a manner that would render the repossessed vehicle part of the bankruptcy estate. With regard to the statutory right of redemption, a lump sum payment of the entire debt owed is required to "tender fulfillment" of all obligations, the Hills' Supremacy Clause arguments notwithstanding. The Hills' plan proposed neither payment of the entire obligation nor payment via a lump sum. With regard to the equitable right of redemption, it appears that a payment plan is a permissible exercise of the right so long as the debtor repays the entire debt. The Hills' plan does not appear to repay the entire debt owed.

LSC's conferral of a conditional right of reinstatement to the Hills did not indicate a belief that the Hills retained legal title. Even if LSC did believe the Hills had title, this point is irrelevant to the analysis of a turn-over complaint. The Notice sent by LSC to the Hills on May 7 explains what would constitute an effective exercise of the right of reinstatement. The Hills did not comply.

Because the repossessed vehicle was not part of the bankruptcy estate

13

at the time the turn-over complaint was filed, the order of the bankruptcy court denying the complaint and dismissing the action is due to be affirmed. An appropriate separate order will be entered, constituting the mandate of this court.

DONE this 21st day of October, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE